**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

04 - 20455 CR - GOLD

MAGISTRATE JUDGE
SIMONTON

**UNITED STATES OF AMERICA**

**vs.**

**SEABOARD MARINE, LTD., INC.,**

_____ **Defendant.** _____ /

## INFORMATION

The United States Attorney charges that:

### HAZARDOUS MATERIALS TRANSPORTATION LAW

At all times material to this Information:

1.      The Federal Hazardous Materials Transportation Law ("FHMTL"), Title 49, United States Code, Section 5101, et seq., was enacted by Congress to provide protection against the risks to life and property inherent in the transportation of hazardous materials and substances in commerce, as defined in 49 Code of Federal Regulations, Section 171.8. The term "hazardous material" includes hazardous substances, hazardous wastes, marine pollutants, elevated temperature materials, materials designated as hazardous in the Hazardous Material Table (49 Code of Federal Regulations, Section 172.101), and materials that meet the classifications in 49 Code of Federal Regulations, Part 173. The term "hazardous substances" includes material, mixtures, and solutions listed in 49 Code of Federal Regulations, Section 172.101, Appendix A. The FHMTL also prescribes criminal penalties for anyone who willfully violates the hazardous material regulations. Title 49, United States Code, Section 5124.



2.      Sections 100 through 185 of 49 Code of Federal Regulations set forth the regulations for transportation of hazardous materials in intrastate, interstate, and foreign commerce, including transportation by public highway and motor vehicle. Any person who transports hazardous materials by public highway must ensure that the hazardous materials shipment is properly classified, described, packaged, marked, labeled, and in condition for shipment in accordance with the hazardous materials rules and regulations.

3.      The Hazardous Materials Table, contained in 49 Code of Federal Regulations, Section 172.101 and Appendix A, identifies materials that are considered hazardous and are regulated by the hazardous materials rules and regulations. Included in this table are hydrochloric acid, phosphoric acid, isopropyl alcohol, sodium hydroxide, methanol, ammonia, and petroleum distillates among others.

4.      Title 49 of the Code of Federal Regulations sets forth specific regulations that govern the transportation of hazardous materials by public highway, specifically:

A.      No person may accept a hazardous material for transportation in commerce unless the hazardous material is properly classed, described, packaged, marked, labeled, and in condition for shipment in accordance with the regulations. 49 Code of Federal Regulations, Section 171.2(a).

B.      No person may transport a hazardous material unless the hazardous material is handled and transported with the proper shipping papers, placarding, and emergency response information. 49 Code of Federal Regulations, Section 171.2(b).

C.      Each carrier who transports hazardous materials must provide immediate notice to the National Response Center of incidents which entail over

2

$50,000.00 in clean-up (leakage, spillage, release, fire, breakage) that occur during loading, unloading, temporary storage, and transportation of hazardous materials. 49 Code of Federal Regulations, Section 171.15.

D.      Each carrier who transports hazardous materials must provide written notice to the Department of Transportation of any incidents, including any unintentional release of hazardous materials, which occur during loading, unloading, temporary storage, and transportation. 49 Code of Federal Regulations, Section 171.16.

E.      Each person who accepts for transportation or transports hazardous materials must have emergency response information available for use at all times the hazardous material is present, including availability to federal, state, or local agencies responding to or investigating an incident. 49 Code of Federal Regulations, Section 172.600.

F.      A carrier is prohibited from leaving a transport vehicle containing hazardous material at any facility unless the transport vehicle is clearly marked and emergency response information is available on the vehicle. 49 Code of Federal Regulations, Section 172.606(b).

G.      A hazardous material employer, which includes a carrier whose employees are engaged in transporting or causing the transportation of hazardous materials, including drivers and dispatchers, must provide hazardous material training as required by the regulations. Hazardous material training includes recognition of hazardous material, emergency response requirements,

3

regulations, and procedures for protecting employees, among others. 49 Code of Federal Regulations, Sections 172.702 and 172.704.

H.   A carrier may not transport a hazardous material by highway unless it is accompanied by a shipping paper prepared in accordance with the regulations. 49 Code of Federal Regulations, Sections 172.200 - 172.203 and 177.817(a).

I.   A carrier may not accept a hazardous material for shipment unless it is accompanied by a shipper's certification.  49 Code of Federal Regulations, Sections 172.204 and 177.817(b).

J.   A carrier may not move a transport vehicle containing a hazardous material unless the vehicle is marked and placarded as required by the regulations. 49 Code of Federal Regulations, Section 177.823(a).

K.   Packages (tanks, barrels, drums, cylinders) containing hazardous material must be properly secured against movement within the vehicle.  49 Code of Federal Regulations, Section 177.834.

L.   When any leaks occur in packages or containers subsequent to initial loading, the carrier must make the package safe for transportation (re-packing, over-packing, re-loading) in accordance with the regulations, or the carrier must dispose of the leaking package in the safest and most expeditious manner under the regulations.  49 Code of Federal Regulations, Sections 173.3(c) and 177.854(b) - (e).

M.   A carrier must protect its drivers by insuring that they have the proper driver's license endorsement for hazardous materials. 49 Code of Federal Regulations, Section 383.

4

## GENERAL ALLEGATIONS

5.      Defendant Seaboard Marine, Ltd., Inc. (hereinafter "Seaboard Marine" or "defendant") was authorized to do business as a foreign for profit corporation in Florida in 1983, and maintained its principle place of business at 8050 N.W. 79th Avenue, Medley, Florida. Defendant Seaboard Marine operated another facility located at the Port of Miami.

6.      Defendant Seaboard Marine was a transportation company that was engaged in intrastate, interstate, and foreign commerce. Seaboard Marine was a motor carrier which provided intermodal transportation services world-wide, including the dispatch of drivers, provision of containers, and the pick-up and delivery of general freight, which at times included hazardous materials. Freight was loaded by individual shippers into containers provided by or through Seaboard Marine; the containers were then transported to various ports, placed on vessels, and shipped to domestic or foreign ports.

7.      In early January, 2002, an individual shipper purchased through a liquidation sale the contents of a warehouse located at 4263 East 10th Lane, Hialeah, Florida. The inventory of items purchased included soaps, perfumes, cleaning substances, solvents, ammonia, and various other chemicals such as hydrochloric acid, isopropanol, potassium hydroxide, phosphoric acid, sodium hydroxide, and petroleum distillates, among others. Most of the chemicals were packaged in 55 gallon drums and cardboard boxes, some of which were labeled by the manufacturer with appropriate Department of Transportation labels and markings. These included hazardous material proper shipping names and UN identification numbers. The shipper of the chemicals contracted to sell them to the Khouley Detergent Factory in Antigua.

8.      On or about January 18, 2002, the shipper contacted Seaboard Marine, leased a 40-

foot container, and arranged for the defendant to transport all of the warehouse contents to Antigua. On or about January 21, 2002, a Seaboard Marine driver delivered a forty-foot container to the warehouse in Hialeah, where it was packed and loaded by the shipper. The container was then sealed by the shipper.

9.      On or about January 22, 2002, Seaboard Marine picked up the container and transported it to the defendant's facility at the Port of Miami to be prepared for shipment to Antigua. The driver for Seaboard Marine did not receive any shipping papers or manifest for the container's contents at the time he picked up the container.

10.      On or about January 30, 2002, the Traffic Department at Seaboard Marine informed the shipper that it could not transport the container until it received a bill of lading, which would include a list of the items being shipped. The following day the shipper faxed defendant a declaration of goods, with a partial list of the individual products and chemicals, and an invoice for fee collection to be presented to Khouley Detergent Factory upon delivery in Antigua.

11.      On or about January 31, 2002, Seaboard Marine reviewed the list of products to be shipped and became aware that some appeared to be hazardous materials. On this same date defendant faxed a memo to the shipper stating that the cargo looked like hazardous material and that in order for it to be loaded onto the vessel and cleared by the U. S. Coast Guard, Seaboard Marine must have a Dangerous Goods Declaration from the shipper.

12.      On or about February 1, 2002, a more detailed list of the container's contents was provided by the shipper to Seaboard Marine. It described additional chemicals which were classified as hazardous materials in accordance with 49 Code of Federal Regulations, Sections 100 through 185. Defendant renewed its demand to be provided with a Dangerous Goods Declaration as a

6

condition to transporting the container. The shipper contacted Laparkan Trading, Inc. to conduct an inventory and re-packing of the container and to prepare the Declaration of Dangerous Goods. Due to regulations, Laparkan Trading, Inc. (Laparkan) was not permitted to enter Seaboard Marine premises. The shipper directed Seaboard Marine to move the container to Laparkan, located at 2929 N.E. 73rd Street, Miami, Florida.

13.     On or about February 6, 2002, defendant Seaboard Marine instructed one of its drivers to transport the container to Laparkan. Prior to departing Seaboard Marine premises, the driver noticed that the container was leaking from the left front. He checked the Trailer/Container Receipt form for hazardous materials information. Seaboard Marine had failed to enter the pertinent hazardous material information into their system, and therefore the documentation provided to the driver did not indicate the presence of hazardous material. The driver proceeded to drive the container to Laparkan. The Laparkan facility was closed and the driver had to return the container to the Seaboard Marine facility at the Port of Miami.

14.     On or about February 7, 2002, Seaboard Marine instructed another driver to transport the container to Laparkan. This driver also noticed leaking from the front of the container when he hooked it up for transport and voiced his concern to Laparkan representatives upon delivery of the container. The Seaboard Marine driver had no  knowledge of the hazardous material contents because the Trailer/Container Receipt form failed to disclose any hazardous material information and he was not provided with a hazardous material shipping paper.

15.     On or about February 7, 2002, employees of Laparkan observed the leaking container and detected a strong chemical odor. They opened the container, saw containers in disarray, refused to touch the contents, and called defendant Seaboard Marine to remove the container.

16.     On or about February 8, 2002, defendant dispatched a driver to Laparkan to return the trailer to the warehouse at 4263 E. 10th Lane in Hialeah, which was the site of the original liquidation sale.  Upon arrival at Larparkan the driver noticed the leakage and immediately notified defendant, which advised the driver that the leak was not a problem because there were no hazardous materials in the container.  Defendant failed to provide its driver with hazardous material shipping papers.  The driver was instructed to deliver the container to the Hialeah warehouse.

17.     Thereafter, the driver arrived at the Hialeah warehouse and again telephoned Seaboard Marine Dispatch.  The driver told defendant about continued leakage from the container and advised that there was no one present to accept delivery. Seaboard Marine instructed the driver to take the container to its facility in Medley.  The driver did so and notified staff at the Medley facility that the container was leaking.  The container was left at the rear of the Seaboard Marine premises in Medley.

18.     On or about February 8, 2002, Seaboard Marine telephoned the shipper and advised that the container was leaking, must be re-packed, and that the shipper must come to the Medley facility and immediately remove the container.  The shipper advised that it would take at least a week or two to arrange for the lease of a warehouse.

19.     On or about February 11, 2002, the Seaboard Marine container with the hazardous material contents was discovered abandoned and leaking outside the vacant warehouse located at 4263 East 10th Lane in Hialeah.  Law enforcement agencies were contacted, and clean-up and disposal of the hazardous materials commenced on February 11, 2002, and continued through February 15, 2002.

## COUNT I

20.     Paragraphs one through nineteen of this Information are incorporated herein as if fully set forth.

21.     From on or about January 22 through on or about February 11, 2002, in the Southern

District of Florida, the defendant,

**SEABOARD MARINE, LTD., INC.,**

knowingly and willfully transported in intrastate commerce by a commercial motor vehicle,

hazardous materials, that is, phosphoric acid, hydrochloric acid, isopropanol, potassium hydroxide,

sodium hydroxide, and petroleum distillates NOS, among others, without proper classification,

description, marking, labeling, and packaging; without the proper shipping papers; without

emergency response information; without emergency instructions for drivers; without marking the

transport vehicle with hazardous material and emergency response information; without providing

drivers and dispatchers with hazardous material training; without a shipper's certification; without

properly securing packages inside the vehicle; without proper disposal and/or repacking of leaking

packages; without notice to the Department of Transportation and the National Response Center of

the leakage; and without insuring that drivers had a hazardous material license endorsement, in

violation of the rules and regulations prescribed by the Department of Transportation, as set forth

in 49 Code of Federal Regulations, Sections 171.2(a) -(b), 171.15 - .16, 172.200 - .204, 172.606(b),

172.702, 172.704, 173.3(c), 177.817(a) - (b), 177.823(a), 177.834, 177.854(b) - (e), and 383; in

violation of Title 49, United States Code, Section 5124.


_____
MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

_____
DIANE PATRICK
ASSISTANT UNITED STATES ATTORNEY

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

04 - 20455 CR - GOLD  MAGISTRATE JUDGE
SIMONTON

UNITED STATES OF AMERICA

CASE NO.

vs.

SEABOARD MARINE, LTD., INC.

**CERTIFICATE OF TRIAL ATTORNEY***

Defendant.
_____/

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| X | Miami | ___ Key West |
| ___ | FTL | ___ WPB ___ FTP |

New Defendant(s)          Yes ___   No ___
Number of New Defendants   ___
Total number of counts     ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    NO
   List language and/or dialect   _____

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                              (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I   | 0 to 5 days | 0(Plea) | Petty | ___ |
   | II  | 6 to 10 days | ___ | Minor | ___ |
   | III | 11 to 20 days | ___ | Misdem. | ___ |
   | IV  | 21 to 60 days | ___ | Felony | X |
   | V   | 61 days and over | ___ | | |

6. Has this case been previously filed in this District Court? (Yes or No)   No
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003? ___ Yes  X No

8. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? ___ Yes  X No
   If yes, was it pending in the Central Region? ___ Yes  X No

9. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes  X No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003? ___ Yes  X No

DIANE PATRICK
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 770744

*Penalty Sheet(s) attached

REV.1/14/04

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: <u>SEABOARD MARINE, LTD., INC.</u>**

**Case No:** 04-20455 CR-GOLD

MAGISTRATE JUDGE
SIMONTON

Count #: 1

<u>    Title 49, United States Code, Section 5124    </u>
<u>    Willful violation of a hazardous materials regulation    </u>

**\* Max.Penalty:** <u>   One to five years probation   </u>

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines,
restitution, special assessments, parole terms, or forfeitures that may be applicable.**